GUY R. GOVE's (dependent's) CASE.

Suffolk.   October 18, 1915. — March 3, 1916.

Present: RUGG, C. J., LORING, CROSBY, & PIERCE, JJ.

*Workmen's Compensation Act.   Words,* "Lost."

Under the workmen's compensation act contained in St. 1911, c. 751, as amended
by St. 1912, c. 571, where death has resulted from an injury to an employee
arising out of and in the course of his employment, the measure of compensation
to which the dependent of the deceased is entitled is not the amount of the
loss caused to the dependent by the death of the employee, but the sum to be paid
is measured and determined by the wages of the deceased, and in case of a partial
dependency is to be the same proportion of the average weekly wages as the
amount contributed by the employee to such partial dependent bears to the
annual earnings of the employee at the time of his injury, without regard to
the benefits, if any, received by the employee from the dependent.

Therefore, where the deceased employee was twenty-three years of age and lived
with his father and mother to whom he paid nothing for his board, which was
worth $5 a week, and contributed an average of $15.38 weekly to the support
of his mother, it was *held,* that the Industrial Accident Board were right in
deciding that the mother of the deceased was dependent upon him for support
to the extent of $15.38 and that the value of the board furnished to the de-
ceased should not be deducted from the amount contributed by him to his
mother's support.

In the same case the mother of the deceased employee testified that he took some
of the money from his wages for carfares and lunches and other different expenses
and handed the balance of his earnings to her, and that, "if he wanted anything
in the way of clothing, or anything of that sort," he always came to her and she
gave him the money.   An arbitration committee found that during the year
previous to his injury he worked six months, and that during that six months
his earnings were $550, or an average weekly wage of $21.15, that out of this $550
he paid $150 for clothing, tuition and incidentals, making an average of $15.38
which he contributed to the support of his mother, she being dependent upon
him for support to that extent.   The Industrial Accident Board confirmed these
findings.   They also found under St. 1911, c. 751, Part V, § 2, that the average
weekly wages earned by a person in the same grade employed in the same class

of employment in the same district were $21.15 and that therefore the finding of the arbitration committee was correct. *Held,* that the compensation awarded was a proper one.

In the same case it appeared that the reason that the deceased did not work during the whole of the year preceding his injury was that for six months of the year he was studying at a university and worked only during the other six months. It also appeared that during the year preceding his injury the deceased had worked for previous employers "by the piece" or for "so much a job." *Held,* that it was not necessary to decide whether the time devoted by the deceased employee to his studies was "lost" within the meaning of that word as used in St. 1911, c. 751, Part V, § 2, in defining "Average weekly wages;" because the case came within the other provision of the same paragraph of the statute, that "where, by reason of . . . the nature or terms of the employment, it is impracticable to compute the average weekly wages, as above defined, regard may be had to the average weekly amount which, during the twelve months previous to the injury, was being earned . . . by a person in the same grade employed in the same class of employment and in the same district."

LORING, J. On June 26, 1914, the deceased with his father went to work for one Brooker "to put up the rough work of the stairs that is done before the house is plastered" in a building under construction for which Brooker was a subcontractor. The next day the deceased lost his balance while at work, fell and was instantly killed.

It appeared in evidence that during the year preceding his death the deceased, who was twenty-three years of age, had been studying at Boston University and for that purpose had worked but six months during that year. It further appeared that his earnings during the year before the accident were from $500 to $600. His mother testified that the deceased "took some of the money for carfares and lunches and other different expenses" and handed the balance of his earnings to her "and if he wanted anything in the way of clothing, or anything of that sort, he always came to me and I gave him the money. . . . I think the college tuition was $90. . . . I do not think altogether his expenses were as much as $150." The arbitration committee found that "during the year previous to his injury he worked six months, and during that six months his earnings were $550, or an average weekly wage of $21.15; that out of this $550, $150 was paid [by] him for clothing, tuition and incidentals, making an average of $15.38, which he contributed weekly to the support of his mother, Catherine M. Gove, she being dependent upon him for support to the amount of $15.38 a week. We, therefore, find that he received an injury arising out of and in the course of his employ-

ment, which resulted in his death on June 27, 1914, and that his mother is entitled to compensation at the rate of $7.27 a week for a period of three hundred weeks from the date of the injury. We also find that he lived at the home of his father and mother and paid nothing for his board, and that his board was worth $5 a week, and we make no deduction from the dependent mother on account of the board furnished by the father."

A review was claimed.

The Industrial Accident Board on review confirmed the findings of the arbitration committee. In addition they found that the deceased had "lost" twenty-six weeks during the preceding year within Part V, § 2, cl. 4,* of the workmen's compensation act. They further found that: "If the average weekly wages should be figured in accordance with the second portion of the section above quoted, that is by [with] regard to the average weekly amount which during the twelve months previous to the injury was being earned by a person in the same grade employed at the same work by the same employer, the average would remain unchanged. If figured, also, on the basis of the average weekly wages earned by a person in the same grade employed in the same class of employment and in the same district, the average is $21.15. Therefore, the average weekly wage reported by the committee is correct." †

The board refused to make six rulings asked for by the insurer so far as they were inconsistent with their findings.‡

---

* St. 1911, c. 751, Part V, § 2, cl. 4, is as follows: "'Average weekly wages' shall mean the earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two; but if the injured employee lost more than two weeks' time during such period then the earnings for the remainder of such twelve calendar months shall be divided by the number of weeks remaining after the time so lost has been deducted. Where, by reason of the shortness of the time during which the employee has been in the employment of his employer, or the nature or terms of the employment, it is impracticable to compute the average weekly wages, as above defined, regard may be had to the average weekly amount which, during the twelve months previous to the injury, was being earned by a person in the same grade employed at the same work by the same employer; or, if there is no person so employed, by a person in the same grade employed in the same class of employment and in the same district."

† On appeal to the Superior Court *Morton*, J. made a decree affirming the decision of the Industrial Accident Board; and the insurer appealed.

‡ The insurer's requests for rulings were as follows:

1. The evidence warranted the finding that the deceased was an employee of Brooker at the time he fell. His father testified: "I made the arrangements with Mr. Brooker for this job. . . . I was to work by the day at $4.40, and it was the same wage for the boy." Brooker testified that the father of the deceased "agreed to so much a flight for this job, $2 a flight. . . . I paid him at the rate of $4.40 because he did not finish that job." In this conflict of testimony the committee and the board were warranted in believing the father and finding that the deceased was an employee of Brooker.

2. The board were right in not deducting $5 a week, the value of the board which the dependent furnished to the deceased.

The ruling of the board on this point is concluded by the decision in *Murphy's Case*, 218 Mass. 278. The insurer has sought to distinguish the case at bar from the decision in that case (first) on the ground that in that case the deceased contributed all his earnings to the dependent and (secondly) on the ground that whatever the rule may be in ascertaining the amount of compensation to be paid to a dependent the value of the board received by the deceased is to be deducted in ascertaining the amount of the contribution made by the deceased to the dependents

"1. On all the evidence the board must find that the applicant, Catherine M. Gove, is not entitled to compensation.

"2. On all the evidence the board must find that Guy R. Gove, at the time he sustained the injuries which resulted in his death, was not an employee of Morris Brooker within the meaning of the workmen's compensation act.

"3. On all the evidence, the board must find that the sum of $5 per week which was held by the committee of arbitration to be a fair charge for board paid to the applicant by the said Guy R. Gove during the year previous to his death, should be deducted from any award made to the applicant in this case.

"4. On all the evidence and upon the report of the committee of arbitration the deceased Guy R. Gove contributed the amount of $5 per week for his living expenses to his mother, Catherine M. Gove, and such amount should be deducted from any award to the said Catherine M. Gove in this case.

"5. On all the evidence it does not appear as was found by the committee on arbitration that the board of the deceased was furnished by his father.

"6. In determining the average weekly wages of the deceased Guy R. Gove, the total amount earned in the year previous to his death and [*sic*] should be divided by fifty-two. It does not appear on all the evidence that any time was lost by the deceased within the meaning of the word 'lost' as used in the workmen's compensation act."

within the latter part of Part II, § 6 * of the workmen's compensation act. But the decision made in the Murphy case covers both points although the particular contentions now made were not made in that case and therefore were not in terms directly discussed by the court in making that decision. In *Murphy's Case* the deceased handed the dependent (his father) all his earnings amounting to $5.67 a week. But it appeared in that case that the father maintained the deceased (his minor son), furnishing him his board, lodging and clothing which cost at least $2.50 a week. If the value of the board, lodging and clothing furnished by the dependent to the deceased is to be deducted in ascertaining the amount of the contribution made by the deceased to the dependent, the deceased in *Murphy's Case* did not contribute all his wages. The amount of his contribution on that basis would have been $5.67 (the amount of his wages) less $2.50, the value of the board, lodging and clothing furnished to him by his father (the dependent). That is to say, the deceased in *Murphy's Case* on that basis contributed a part only of his wages to his father the dependent. It is apparent therefore that *Murphy's Case* is a decision denying the correctness of both of the contentions now made by the insurer.

In view of the fact that the contentions now made by the insurer were not directly made and therefore not discussed in *Murphy's Case*, and because of insistence of counsel in the case at bar upon authority of *Tamworth Colliery Co. Ltd.* v. *Hall*, [1911] A. C. 665, we add a further word to the explanation of the matter given in that case.

Where an employee receives and is killed by a personal injury arising out of and in the course of his employment and by reason

---

* The latter part of the St. 1911, c. 751, Part II, § 6, is as follows: "If the employee leaves dependents only partly dependent upon his earnings for support at the time of his injury, the association shall pay such dependents a weekly compensation equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of his injury. When weekly payments have been made to an injured employee before his death, the compensation to dependents shall begin from the date of the last of such payments, but shall not continue more than three hundred weeks from the date of the injury."

thereof a claim is made under the workmen's compensation act, two questions arise, namely: (first) was the claimant in whole or in part dependent upon the deceased and (secondly) if he was, what is the amount to be paid the dependent under Part II, § 6, of the act?

So far as the first question is concerned there is no substantial difference between our workmen's compensation act (St. 1911, c. 751, Part II, § 6) and the English workmen's compensation act (St. 6. Edw. VII, c. 58, § 13, cl. 4). For that reason decisions under the English act upon the first question are authorities to be considered with respect to that question under our act. *Tamworth Colliery Co. Ltd.* v. *Hall, ubi supra,* was in terms a decision upon the first of these two questions although in effect it was also a decision upon the second. The deceased in that case (a minor) handed to his father all his wages amounting to 6s. 11d. a week. "This sum was admitted to be not more than sufficient to pay for his (the deceased's) maintenance." But it also appeared in that case that the deceased was "able to lather, shave, and cut hair" and that he helped his father out of hours in his occupation of a barber. The father "estimated the loss to the business consequent on the death of the deceased at 6s. a week." Under these circumstances it was held by the House of Lords that in determining whether the father was or was not in fact dependent upon the deceased all the circumstances had to be considered including the value of the maintenance received by the deceased from his father and the value of the services rendered out of hours by the deceased to his father. And the decision of the county judge, who felt bound as matter of law under the circumstances stated above to find that the father was not dependent upon the deceased, was set aside.

But on the second of the two questions stated above, namely, what sum is to be paid to the dependent as "a weekly compensation" under Part II, § 6, of our workmen's compensation act in case the first question of fact is decided in favor of the person who claims to have been dependent upon the deceased, the decision in *Tamworth Colliery Co. Ltd.* v. *Hall* and the principles on which it was decided are of no consequence.

It is provided in the English act that in case the deceased workman left dependents in part dependent upon his earnings the amount payable is "such sum" as "may be determined . . . to be

reasonable and proportionate to the injury of the said dependents."
St. 6 Edw. VII, c. 58, Schedule 1, (a) (ii).   That is to say, the
amount of compensation to be paid under the English workmen's
compensation act is measured by the injury caused to the depend-
ents by the death of the deceased.   In other words, the measure
of compensation under the English act is the same as that pro-
vided by Lord Campbell's act (St. 9 & 10 Vict. c. 93) as the meas-
ure of compensation to be made for tortiously causing the death
of one upon whom the plaintiffs were dependent.

  But the principle of Lord Campbell's act has never been adopted
under any circumstances in Massachusetts.   Fifty years before
the enactment of Lord Campbell's act the Legislature of Massa-
chusetts adopted the policy of imposing a penalty for wrongfully
causing the death of another and the penalty so imposed was
given as a gratuity to those who were dependent upon the deceased.
That policy has been continued in Massachusetts down to the
present time.   See *Hudson* v. *Lynn & Boston Railroad*, 185 Mass.
510; *Brooks* v. *Fitchburg & Leominster Street Railway*, 200 Mass.
8; *Boott Mills* v. *Boston & Maine Railroad*, 218 Mass. 582.   With
this policy of Massachusetts as to the way in which the wrongful
causing of the death of a human being was to be dealt with, it is
not surprising to find that in enacting the workmen's compen-
sation act the Legislature did not adopt the English measure of
the compensation to be made to dependents in case the deceased
employee was killed by an injury received in the course of and
arising out of his employment.   In place of following the English
rule (the amount of injury caused to the dependents) the Legisla-
ture adopted the wages of the deceased as the basis by which the
amount to be paid was to be measured.   They provided that
where the claimant was wholly dependent upon the deceased one
half of his average weekly wages (within a maximum and mini-
mum amount there stated) should be allowed for a period of three
hundred weeks from the date of the injury.   Where the claimant
is wholly dependent upon the deceased it is of no consequence
whether he contributed all his wages or only a fraction of them
to the dependent, and it is of no consequence whether the de-
ceased did or did not receive any benefit from the dependent.   The
sum to be paid is measured by the wages of the deceased not by the
injury done to the dependent.   Where the dependents were only

partly dependent upon the earnings of the deceased the amount
to be paid is "a weekly compensation equal to the same propor-
tion of the weekly payments for the benefit of persons wholly
dependent as the amount contributed by the employee to such
partial dependents bears to the annual earnings of the deceased
at the time of his injury." The amount to be paid in case the
dependent was partly dependent only is to be a portion of that
paid in case of those wholly dependent and the amount is to be
determined on the same basis — that is to say, it is to be meas-
ured not by the injury done the dependent but by that propor-
tion of the average weekly wages of the deceased which the
amount of the wages contributed by him to the dependents bore to
the amount of his annual earnings without regard to the benefits,
if any, received by the deceased from the dependents.

The insurer in the case at bar has made a further contention,
namely, that the rule adopted by the board was inconsistent with
itself. His argument in this connection is that, if no deduction
is to be made from the amount of wages of the deceased by reason
of board which was worth $5 a week, no deduction ought to have
been made by reason of the $150 spent by the deceased "for
clothing, tuition and incidentals." But the two stand on different
footings. It appears that the deceased handed substantially all
of his earnings to his mother; that when he wished to spend money
for "clothing, tuition and incidentals" he procured the necessary
money from her. So far as these matters are concerned it is plain
that his mother acted as his banker. He did not make a contri-
bution to his mother of all his earnings. It appears that "he took
some of the money for carfares and lunches and other different
expenses" before he handed anything to his mother. The sums
deducted by him for these purposes before handing anything to
his mother stood on the same footing as the money he got from
his mother to spend in "clothing, tuition and incidentals." The
only difference between the two is that in one case he obtained
a benefit from the common fund to which he made a contribu-
tion and in the other that he spent some money on his own ac-
count out of his wages before he contributed the balance to the
dependent his mother.

3. The next contention made by the insurer is that in deter-
mining the average weekly wages of the deceased the time during

which he elected not to work in order to pursue his studies at the university is not time "lost" within the provision of Part V, § 2, cl. 4. We do not find it necessary to consider this question because there was no evidence on which it could have been found (or at least impliedly found as it was impliedly found both by the arbitration committee and by the Industrial Accident Board) that the deceased worked as an employee during the year next preceding his accident. The father of the deceased testified that in the particular work on which the deceased was employed when he met his death both he and his son were working by the day. But nowhere did he testify that at any other time during the preceding year had he or his son worked by the day. The father testified that during the year he had worked for other contractors; that he had worked "nearly all summer for Mr. O'Connor" and "we have worked also for Mr. Gerlach, and Lamson and Seeley, during the past year." He also testified "I have worked for so much a job, but this job was not that way." Beyond that there was no testimony by the father of the deceased as to the basis on which he and his son worked for other persons during the year next preceding the injury here in question. O'Connor testified that the deceased and his father worked for him "last year and this year. They went to work for me just after Labor day, 1913. . . . I always employed them by the piece." O'Connor testified that the job which began on Labor day, 1913, lasted five or six weeks and "another job came in May, 1914," and the father and son had just completed that job when he began the work here in question.

Under these circumstances the case comes within the last clause of Part V, § 2, cl. 4, namely, "Where . . . it is impracticable to compute the average weekly wages, as above defined, regard may be had to the average weekly amount . . . earned . . . by a person in the same grade employed in the same class of employment and in the same district." It appeared that the deceased was a member of the union and that the union rate of wages was $4.40 a day.

The entry must be

*Decree affirmed.*

*A. H. Stetson,* for the insurer.
*W. A. Chandler,* for the dependent mother.