## JOHN BARTONI'S (dependent's) CASE.

Suffolk.    October 16, 1916. — December 14, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act,* Average weekly wages, Dependency.    *Statute,*
    Amendment.    *Words,* "Average weekly wages," "Time so lost," "Lost,"
    "Dependents."

Under St. 1911, c. 751, Part V, § 2, which provides that "'Average weekly wages'
    shall mean the earnings of the injured employee during the period of twelve
    calendar months immediately preceding the date of injury, divided by fifty-
    two; but if the injured employee lost more than two weeks' time during such
    period then the earnings for the remainder of such twelve calendar months
    shall be divided by the number of weeks remaining after the time so lost has
    been deducted," the average weekly wages of a workman employed in a granite
    quarry, who during the year preceding his injury did not work for about thir-
    teen weeks by reason of inclement weather that prevented work in the quarry,
    are to be computed by dividing the amount of his pay for the year preceding
    the injury by the number of weeks that he actually worked.
Where a dependent widow of a deceased employee, who has been awarded com-
    pensation under St. 1911, c. 751, Part II, § 6, dies before the expiration of the
    period for which the award was made and before any payment has been made
    to her, the administrator of her estate is entitled to receive the amount of the
    weekly payment awarded to her from the date of the injury until the time of
    her death.
Where such a deceased employee left besides his widow a child under the age of
    eighteen years, who at the time of his death was a member of his family and
    one of his next of kin, under St. 1911, c. 751, Part II, § 7 (c), and under Part
    III, § 12, as amended by St. 1914, c. 708, § 11, there should be a review of
    the award by the Industrial Accident Board, who on such review have author-
    ity to order payments to be made for the benefit of such minor child for a
    period subsequent to the death of the widow.
St. 1914, c. 708, § 11, which amended St. 1911, c. 751, Part III, § 12, so that it
    reads, "Any weekly payment under this act may be reviewed by the Indus-
    trial Accident Board, and on such review the board may, in accordance with
    the evidence and subject to the provisions of this act, issue any order which it
    deems advisable," relates to procedure and is applicable to a weekly payment
    awarded for an injury that occurred before the enactment of such amendment.

APPEAL to the Superior Court under St. 1911, c. 751, Part III,
§ 11, as amended by St. 1912, c. 571, from a decision of the In-
dustrial Accident Board.

The case was heard by *McLaughlin,* J.    The material facts as
shown by the evidence taken before the arbitration committee

and reported by the Industrial Accident Board and by the findings of that board are stated and described in the opinion. The decision of the Industrial Accident Board was as follows:

"The Industrial Accident Board finds and decides, upon all the evidence, that the employee, John Bartoni, received a personal injury arising out of and in the course of his employment on August 26, 1913, said personal injury causing his death; that the average weekly wages of the employee were $11.53; that Asonta Bartoni, the widow of the employee, living with him at the time of the injury, was conclusively presumed to be wholly dependent for support upon his earnings and entitled, therefore, to a weekly payment of $5.76½ for a period of three hundred weeks from August 26, 1913; that said right to weekly payments vested in her at the time of her death and that such weekly compensation as has accrued before her death and since, and as continues through the remainder of the period of three hundred weeks, passes to Joseph Bartoni, administrator. of the estate of Asonta Bartoni, as such, and that said administrator is entitled to the payment thereof."

The judge made a decree affirming the decision of the Industrial Accident Board and ordering that the insurer should pay to Joseph Bartoni, the administrator of the estate of Asonta Bartoni, a weekly payment of $5.76½ for a period of three hundred weeks from August 26, 1913. The insurer appealed.

*G. Gleason,* for the insurer.

*J. M. Marshall,* for the administrator of the widow.

RUGG, C. J. One question presented on this record is the meaning of "average weekly wages" in the workmen's compensation act. The pertinent facts in that connection are that the deceased, who received a mortal injury arising out of and in the course of his employment, was a laborer at the granite works of the subscriber. During the year preceding his injury he had not worked for a period of 12.97 weeks, because the weather did not permit. He worked exclusively for the subscriber and when he did not work it was because of the weather and for no other reason. Since he was a laborer in granite works, the assumption seems necessary that the inclement weather, which was the cause for his not working for 12.97 weeks, was a cause common to the employment and not peculiar to the employee. His total earnings

for the year were $449.76. The governing words are found in St. 1911, c. 751, Part V, § 2: "'Average weekly wages' shall mean the earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two; but if the injured employee lost more than two weeks' time during such period then the earnings for the remainder of such twelve calendar months shall be divided by the number of weeks remaining after the time so lost has been deducted."

This definition is significantly unlike any provision in the English Act. It there is provided that "average weekly earnings shall be computed in such manner as is best calculated to give the rate per week at which the workman was being remunerated." St. 6 Edward VII, c. 58, sched. 1, (2) (a). It was pointed out in *Gove's Case*, 223 Mass. 187, 192 to 194, that the measure of compensation provided by our act is quite different from that established by the English act. Therefore, decisions of the English courts can throw no light upon the point we have to decide. That portion of the sentence in the definition of average weekly wages following that just quoted, and relating to continuous work of a specified kind for different employers, was under consideration in *Gillen's Case*, 215 Mass. 96, but it affords no assistance in deciding the case at bar.

The broad question, then, is the meaning of the words "average weekly wages" in the act as applied to kinds of employment where it is a necessary condition that by reason of inclement weather the employees should lose in each year a substantial aggregate of time. When our workmen's compensation act was adopted it was obvious that the lack of accurate definition of average weekly wage in the English statute had given rise to considerable litigation. The English act was uncertain in this regard. It would have been an invitation to continued actions in the courts to have imported its words into our act. Doubtless those who framed our act were aware of this embarrassment in the administration of the English act. In establishing a new definition of "average weekly wages" for our act it well may have been intended to obviate many of the difficulties which had been developed by experience under the English act. See report of Massachusetts Commission on Compensation for Industrial

Accidents, 1912, page 53. The definition, Part V, § 2, in effect means that where a man works regularly on every working day for twelve calendar months preceding his injury, then his total wages received during that time are to be divided by fifty-two weeks, in order to ascertain his average weekly wage. The same rule is followed when no more than two weeks are lost by the employee during that twelve months. Thus wages are averaged for a year for such an employee. But where more than two weeks are lost during the twelve calendar months preceding the injury, then the "average weekly wages," on which the compensation payable under the act is based, is found in a different way. It is ascertained simply by dividing the total amount received as wages during the twelve months by the weeks during which labor actually is rendered. That is not an average weekly wage for a year. It is an arbitrary definition of average weekly wage. In a sense it is an artificial average. But it is the standard established by the act. Whatever apparent confusion there may be in the definition arises from a preconception that the period over which the wages are to be divided must be the same in all cases in order to obtain an average. But that is not the theory of the definition. Whatever criticism may be made of the definition as thus interpreted, it at least has the merit of simplicity. It is explicit and readily understood. It is applicable to numerous craftsmen who are liable to lose much time during any period of twelve calendar months because of bad weather. It may have been thought by the Legislature that in case of injury to them the compensation payable under the act should be based on the wages which they receive when actually at work rather than upon what would be a weekly average of their wages spread over the whole year, including the days when they do not work as well as the days when they do work.

It has been argued that the words "time so lost" in the definition do not describe time during which one does not work because of bad weather. Whether that argument is sound depends upon the significance of the word "lost." Ordinarily, when that word is used in connection with the time of one who works, it means the time when one might have worked but was prevented. It often is employed to express the effect of weather. It is common speech to say of the carpenter, the mason and others engaged in

outdoor employment, that they have lost time because of rain, or snow, or cold. One is said to lose the pleasure of a journey because of rain, to lose the benefit of a vacation by reason of rough weather, to lose the grandeur of an extended mountain prospect because of mist and to lose an opportunity because of a delayed train. This sense of the word "lost" is in accordance with a "common and approved usage of the language," the rule established by R. L. c. 8, § 4, cl. 3, for the construction of words in statutes. It would be too narrow a definition to confine its scope to cases where the laborer might have worked but for some reason operating on himself alone and not affecting others in the same grade of employment. The plain and natural signification of the controlling words of the act covers such a case as the present. It would require some refinement so to construe it as to exclude one who was deprived of work solely because of weather from the general classification of those who have lost more than two weeks' time in twelve months. As was said by Hammond, J., in *Murphy's Case*, 218 Mass. 278, it was the purpose of the Legislature by this act "to provide a few general rules easily understood and easy of application." It is consonant with such purpose to interpret the act to include among those who have lost more than two weeks' time during the year persons who have been prevented from working by inclement weather. The board ruled rightly that, since the deceased employee lost more than two weeks' time in the year preceding his injury, the total amount received by him as wages during the year was to be divided by the actual number of weeks during which he worked, in order to find his average weekly wage.

The right to the weekly award was not vested absolutely in the widow, but continued only during her life. The right to compensation on her account ceased with her death. *Murphy's Case*, 224 Mass. 592.

The administrator of the widow of the deceased employee is entitled to the weekly payment provided by Part II, § 6, of the act, "from the date of the injury" until the time of the decease of the widow. In this connection it is of no consequence that the widow died before any payment was made to her. No compensation had been paid to her because of pending negotiations as to settlement for a lump sum. She was herself conclusively pre-

sumed to be dependent upon the employee, and the obligation rested strongly on her to support their minor children. *Coakley's Case*, 216 Mass. 71, 74.

The deceased employee left as his family a widow, now deceased, and five children, four of whom were over twenty-one years of age and one of whom was fourteen years old. The brothers and sisters of this minor child have agreed to release to him whatever rights they may have to compensation. The minor child comes within the definition of "dependents" given in Part V, § 2, of the act, because he was a member of the employee's family as well as one of his next of kin. *Cowden's Case*, 225 Mass. 66. By Part II, § 7 (c), he would be conclusively presumed to have been wholly dependent upon his father, the deceased employee, except that his mother survived and was conclusively presumed to be dependent. It is provided by Part III, § 12, as amended by St. 1914, c. 708, § 11, that "Any weekly payment under this act may be reviewed by the Industrial Accident Board, and on such review the board may, in accordance with the evidence and subject to the provisions of this act, issue any order which it deems advisable." This section occurs in the "Part" of the act which is devoted to "Procedure." This section in the original act, before the amendment, expressed in a crude way in connection with other parts of the act (see Part V, § 2) the idea that the board might adapt the relief afforded by the act to changed circumstances like those here disclosed. The amendment, which was part of an act embodying many perfecting provisions, made clear in this respect what was before somewhat obscure. Even though the injury in the case at bar occurred before the enactment of the amendment, the liability of the insurer is not enlarged. See *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1. Moreover, this section is broad in its scope. It should be given a construction commensurate with its obvious purpose. It would be "subject to the provisions of" the workmen's compensation act to order the payment of weekly compensation to be made to a minor child of the deceased employee actually dependent upon his father for support at the time of the latter's decease, after the decease of his widowed mother. The case at bar is the typical one referred to by way of illustration in *Murphy's Case*, 224 Mass. 592. What was

there said by way of argument is now adopted as the ground of decision.

The decree must be reversed and the case remanded to the Industrial Accident Board, where a motion may be made for further hearing and the exercise of the supervisory power of the board under Part III, § 12, as amended by St. 1914, c. 708, § 11.

*So ordered.*