**MOORE et al. v. LUMBERMEN'S RECIPROCAL ASS'N.　(No. 795.)**

(Court of Civil Appeals of Texas. Beaumont.
May 9, 1922. Rehearing Denied
May 31, 1922.)

1. **Master and servant ⬅388—Representative of deceased compensation claimant entitled to accrued unpaid installments.**

Upon the death of a beneficiary to whom an award of compensation has been made under the Employers' Liability Act,[1] accruing and payable in periodic installments, the lawful representatives of his or her estate may claim and receive such portion thereof as had accrued and remained unpaid at the time of the beneficiary's death, but the unaccrued compensation payments lapse.

2. **Master and servant ⬅388—Right to compensation for death personal to employé's legal beneficiaries.**

The right to compensation for the death of an employé under the Employers' Liability Act is personal to employé's legal beneficiaries, and is not a vested right to be transmitted by will or inheritance, under Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—14, 5246—15, providing for payment of compensation to the legal beneficiaries of the deceased employé for "their sole and exclusive benefit," notwithstanding article 5246—35, providing that, where injury from which employé dies was sustained in the course of employment, the cause of action shall survive, in view of articles 5246—3, 5246—12, 5246—17, and Rev. St. art. 4698.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Proceeding by Minnie Sanders, for compensation for injuries under the Employers' Liability Act, opposed by the Mardez Lumber Company, employer, and the Lumbermen's Reciprocal Association, insurance carrier. The insurance carrier brought suit to set aside the award of the Industrial Accident Board, and from the judgment setting aside award, and giving them insufficient relief, Mrs. Alice Moore and others, the heirs of Minnie Sanders, appeal. Affirmed.

Collins, Morris & Barnes, of Beaumont, for appellants.

Andrews, Streetman, Logue & Mobley, of Houston, for appellee.

O'QUINN, J. This is an agreed case on the facts. They show:

(1) That on December 29, 1919, the Mardez Lumber Company was operating a sawmill at Benford, Tex., and on said date was a subscriber to the Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), carrying a policy of insurance with the Lumbermen's Reciprocal Association, appellee herein. On said date Pete Sanders was an employé of said Mardez Lumber Company, and was covered by said policy of insurance, and on said date sustained injuries in the course of his employment, resulting in his immediate death. Minnie Sanders, wife of said Pete Sanders, and daughter of appellants, gave due notice to the Mardez Lumber Company and to the Lumbermen's Reciprocal Association, appellee, of the injury and death of her husband, and made claim for compensation, liability for which was admitted by appellee. The average weekly wages of Pete Sanders was $18.79, making the compensation rate $11.27 per week. Appellee paid to Minnie Sanders $5.63 per week for 27 weeks, but withheld $5.64 per week for said time for the unborn child of the enceinte mother, Minnie Sanders. Checks for $5.63 were sent to Minnie Sanders for the weeks ending July 13 and July 20, 1920, which she did not cash. The unborn child, for which the 29 installments for $5.64 each were reserved, was stillborn on July 20, 1920. Minnie Sanders died intestate July 21, 1920, leaving no debts owing by her estate. Her sole heirs are her father, Ed. L. Moore, and mother, Mrs. Alice Moore, appellants. At the time of Minnie Sanders' death her mother, Alice Moore, was divorced from her husband, and was living with her daughter, Minnie Sanders, and was dependent upon her son-in-law, Pete Sanders, for support. The appellee refused to pay the 29 weekly payments of $5.64 each which had been reserved for the stillborn child, amounting to $163.56, and also refused to pay the two payments for the weeks ending July 13th and July 20th, amounting to $11.26, for which checks had been issued to Minnie Sanders, but not cashed. The total amount of insurance which had accrued to the beneficiaries of Pete Sanders up to the death of his wife, Minnie Sanders, amounted to $326.83, of which $152.91 had been paid, leaving $174.82 unpaid.

(2) That on August 12, 1921, the Industrial Accident Board made the following award:

"Pete Sanders (Dec'd), Employee, v. Mardez Lumber Company, Employer, Lumbermen's Reciprocal Association, Insurer.　F–1651.

"On this 12th day of August, A. D. 1921, after due notice to all parties at interest, came on to be considered by the Industrial Accident Board the claim for compensation made and asserted herein by Mrs. Minnie Sanders, surviving widow of Pete Sanders, deceased, and her estate against the Lumbermen's Reciprocal Association; and,

"It appearing that the questions involved herein have not been settled by agreement of the parties, as provided by law, the Board finds as follows:

"(1) That on December 29, 1919, the Mardez Lumber Company was a subscriber to the Employers' Liability Act, and on that date carried a policy of insurance with the Lumbermen's Reciprocal Association.

"(2) That on said 29th day of December, 1919, Pete Sanders was in the employ of the said Mardez Lumber Company, and as such employé was covered by said policy of insurance.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91.

241 S.W.—70

"(3) That on said date and while engaged in the course of his employment the said Pete Sanders sustained injuries which resulted in death as set out in report of accident, claim for compensation and other evidence now of record in this cause.

"(4) That the average weekly wages of the said Pete Sanders, deceased, made the predicate of compensation herein is the sum of $18.-79, and his surviving legal beneficiary and her estate are entitled to compensation at the rate of $11.27 per week.

"The Board further finds that said Pete Sanders, deceased, left as his sole and exclusive surviving legal beneficiary his widow, Mrs. Minnie Sanders, who became entitled to recover of and from the Lumbermen's Reciprocal Association compensation as an absolute and vested right for the definite period of 360 weeks at the rate of $11.28 per week, payable weekly from week to week as each payment accrued.

"The Board further finds that claim for compensation was made and asserted herein by the said Mrs. Minnie Sanders and that the said Lumbermen's Reciprocal Association admitted liability and assumed the payment of compensation; that at the time said claim was filed and asserted there was expectation that a child would be born to the said Mrs. Minnie Sanders as issue of the marriage union between herself and the deceased, Pete Sanders, and that as a consequence of that expectation and status the said Lumbermen's Reciprocal Association withheld payment of one-half of each weekly payment of said compensation that was due and payable to the said Mrs. Minnie Sanders, and that as a result there was only in fact paid to said beneficiary twenty-six weekly payments at $5.63 per week and aggregating the total sum of $146.38; that on July 20, 1920, the expected posthumous child was born, but that life was extinct at birth and that therefore the said stillborn child did not become a legal beneficiary of the deceased, Pete Sanders; that on July 21, 1920, the said Mrs. Minnie Sanders, the said sole and exclusive surviving legal beneficiary of Pete Sanders, deceased, died herself; that on the date of her death there had accrued $29²/₇ weekly payments of the compensation which she was entitled to recover of said Lumbermen's Reciprocal Association at said weekly rate of $11.27, and aggregating the total sum of $330.-05; and there was therefore an unpaid balance of compensation that had accrued for the benefit of the said Mrs. Minnie Sanders in the sum of $183.67 at the time of her death.

"The Board further finds that the estate of the said Mrs. Minnie Sanders, now deceased, stands in her place and stead in respect to his compensation benefit and that said estate and its legal representatives are therefore entitled to recover herein of and from said Lumbermen's Reciprocal Association the unpaid and unaccrued remainder of said compensation that became a vested and absolute right in the said beneficiary; that said estate and legal representative thereof is entitled to an order herein awarding compensation for said unpaid balance of compensation in said sum of $183.67 that had accrued on the date of the death of Mrs. Minnie Sanders, deceased, and also to an award for the payment of the unaccrued weekly compensation at the rate of $11.27 for the period of 330⁵/₇ weeks that had not accrued at the

date of the death of the said Mrs. Minnie Sanders.

"The Board further finds that Mrs. Minnie Sanders and her estate have been represented in the presentation to and prosecution of said claim for compensation by Collins, Morris & Barnes, attorneys at law residing at Beaumont, Texas, and that their services rendered in this connection have been of the reasonable value of 15 per cent. of the first $1,000 and 10 per cent. of all amounts in excess of said first $1,000 paid on this award, to be paid out of weekly installments of compensation from week to week as the same accrue.

"It is therefore ordered, adjudged and decreed by the Industrial Accident Board that the Lumbermen's Reciprocal Association pay to the estate of Mrs. Minnie Sanders, deceased, and to its legal representatives the sum of $183.67, and that it also pay to said estate and said legal representatives weekly compensation at the rate of $11.27 per week for the period of 330⁵/₇ weeks, said weekly compensation to begin to accrue on July 22, 1920, and to be payable thereafter from week to week as each weekly payment accrues until said period has fully expired, less attorney's fee hereinafter ordered paid to Collins, Morris & Barnes, attorneys of Beaumont, Texas.

"It is further ordered, adjudged and decreed by the Board that the Lumbermen's Reciprocal Association pay to Collins, Morris & Barnes, attorneys of Beaumont, Texas, a fee in a sum equal to 15 per cent. of the first $1,000 and 10 per cent. of all amounts in excess of said first $1,000 paid on this award, to be paid out of weekly compensation from week to week as the same accrue.

"It is further ordered, adjudged and decreed by the Board that when this award has been paid and satisfied in accordance with its terms and provisions that the Lumbermen's Reciprocal Association will stand fully acquitted and discharged from liability on account of this claim for compensation."

(3) That within 20 days after said above set out award was made appellee gave notice to the adverse parties and to the Industrial Accident Board that it did not consent to and was not willing to abide by said award, and within 20 days thereafter filed this suit to set same aside.

The above facts are epitomized by appellee in its brief as follows:

"The case was tried on an agreed statement. The salient facts may be summarized as follows:

"(1) Pete Sanders was killed on December 29, 1919.

"(2) He left a surviving wife, Minnie Sanders, who, at the time of his death, was expectant.

"(3) Pete Sanders' average weekly wages were $18.79; the rate of compensation was $11.27 per week.

"(4) Minnie Sanders was paid compensation at the rate of $5.63 a week for 27 weeks or until July 6, 1920. The sum of $5.64 each week was held in abeyance awaiting the birth of the expected child.

"(5) Checks were sent out to Minnie San-

ders for the weeks ending July 13th and July 20th, but she did not cash them.

"(6) On July 20th the child was born dead.

"(7) On July 21, 1921, Minnie Sanders died, leaving surviving her a mother, Mrs. Alice Moore, and father, Ed L. Moore.

"(8) Up to this time no award of the Industrial Accident Board had been made.

"(9) Thereafter, without an award of the Industrial Accident Board, Mrs. Alice Moore filed suit in the Sixtieth District Court of Jefferson County against Lumbermen's Reciprocal Association and Ed L. Moore. Lumbermen's Reciprocal Association filed a plea in abatement, raising the question that an award should first be obtained. Thereupon Mrs. Alice Moore filed a claim before the Industrial Accident Board and the Board entered an award for the unpaid compensation. This award was appealed from by Lumbermen's Reciprocal Association, and by agreement the suit was filed in Jefferson county, instead of the county where the injury occurred.

"(10) The trial court entered judgment in favor of Mrs. Moore and Ed L. Moore for the amount which had accrued prior to the death of Minnie Sanders, and denied a recovery for that due after the death of Minnie Sanders."

The case was tried before the court without a jury, and judgment rendered setting aside the award of the Industrial Accident Board, and gave the appellants judgment for $174.82, the amount of the accrued but unpaid installments of compensation at the date of the death of Minnie Sanders, with 6 per cent. interest thereon from July 21, 1920. From this judgment appellants have brought this appeal.

From the above it will be noted that the award of the Industrial Accident Board was made on August 12, 1921, more than a year after the death of Minnie Sanders, wife and sole legal beneficiary of Pete Sanders, she having died on July 21, 1920. The agreed statement of facts does not disclose upon whose application or under what conditions the award was made. However, the brief of appellee discloses that after the death of Minnie Sanders Mrs. Alice Moore, her mother, and one of the appellants here, filed suit in the district court of Jefferson county, Tex., against the Lumbermen's Reciprocal Association to enforce payment of the weekly installments of compensation; that said association filed a plea in abatement of said suit, raising the question that an award should be obtained before a suit for the enforcement of payments could be maintained; that thereupon Mrs. Moore filed claim before the Industrial Accident Board, and the Board entered the award above set out. The said award was appealed from by the Lumbermen's Reciprocal Association, and suit was filed to set same aside.

Under an appropriate assignment of error appellants assail the judgment on the ground that the right of Minnie Sanders to compensation for the death of her husband did not terminate upon her death, but descended to and vested in her heirs, to wit, her father and mother, appellants, and that they are entitled to recover the unpaid balance of such compensation.

[1] We have concluded that this assignment should be overruled. Upon the death of a beneficiary, to whom an award has been made, pursuant to the provisions of law, accruing and payable in periodic installments, the lawful representative of his or her estate may claim and receive such portion thereof as had accrued and remained unpaid at the time of the death of the beneficiary. Poccardi v. Ott, 86 W. Va. 565, 104 S. E. 54; Jackson v. Berlin Const. Co., 93 Conn. 155, 105 Atl. 326; Matecny v. Vierling Steel Works, 187 Ill. App. 448. This seems to be the general rule. In Schneider on Workmen's Compensation (1922 Ed.) § 380, it is said:

"Some acts expressly provide for termination of payments on the death of the beneficiary or upon contingencies such as remarriage of a dependent widow or widower or cessation of dependency, other acts are so construed. A few states provide that, upon death or remarriage of a dependent widow or widower during the term of benefit payments, subsequent payments shall go to other dependents, if any, while other acts are construed or expressly provide that upon the death of dependents the right to compensation, which is a vested right, passes to the executor or administrator. *But, in the absence of some provision vesting in some survivor the right to compensation payments, the general rule is that the death terminates the compensation. And the personal representative is entitled only to the amount of compensation due at the time of the death of the injured employé.*" (Italics ours.)

This view is sustained by many authorities. In re Murphy, 224 Mass. 592, 113 N. E. 283; In re Bartoni, 225 Mass. 349, 114 N. E. 663, L. R. A. 1917E, 765; Erie Railway Co. v. Callaway, 91 N. J. Law, 32, 102 Atl. 7; Jackson v. Berlin Const. Co., 93 Conn. 155, 105 Atl. 326; Poccardi v. Ott, 86 W. Va. 565, 104 S. E. 54; East St. Louis Board of Education v. Industrial Commission, 298 Ill. 61, 131 N. E. 123; In re Burns, 218 Mass. 8, 105 N. E. 601, Ann. Cas. 1916A, 787.

[2] The compensation provided for an injured employé is for his personal benefit, and, when he dies from some outside cause, subsequent to being injured, the unaccrued compensation payments lapse; his legal beneficiaries and dependents cannot collect them. See authorities supra. So, when the employé is killed in the course of his employment, the compensation provided is personal to his legal beneficiaries for their sole and exclusive benefit, and their right to the compensation is not a vested right, to be transmitted by will or inheritance. U. S. F. & G. Co. v. Salser (Tex. Civ. App.) 224 S. W. 557; T. E. Ins. Association v. Boudreaux (Tex. Civ. App.) 213 S. W. 678; In re Murphy, 224 Mass. 592, 113 N. E. 283; In re Bartoni, 225 Mass. 349, 114 N. E. 663, L. R. A. 1917E, 765;

Board of Education v. Industrial Com., 298 Ill. 61, 131 N. E. 123; Wozneak v. Buffalo Gas Co., 175 App. Div. 268, 161 N. Y. Supp. 675; Lahoma Oil Co. v. Industrial Com. (Okl. Sup.) 175 Pac. 838, 15 A. L. R. 817; Ray v. Industrial Com., 99 Wash. 176, 168 Pac. 1121, L. R. A. 1918F, 561; Erie Railway Co. v. Callaway, 91 N. J. Law, 32, 102 Atl. 6; Casmey v. Parks (Sup.) 177 N. Y. Supp. 913; 1 Schneider on Workmen's Compensation, § 380.

The precise question involved here was determined by the Court of Civil Appeals at Galveston in the Salser Case, supra. In that case Salser was an employé of the Trinity County Lumber Company, and in the course of his employment received an injury, resulting in the loss of one of his eyes. In recognition of its liability, the company entered into an agreement with Salser to pay him $8.65 per week for 100 weeks, which agreement was filed with and approved by the State Industrial Accident Board. The company complied with its agreement and made weekly payments from October 8, 1917, to the death of Salser, February 23, 1918, when it refused to make any further payments. Salser did not die from the injury received, but from disease contracted after the injury. After the death of Salser, the Industrial Accident Board, acting upon the application of the mother, brother, and sisters of Salser, ordered the company to pay the unpaid balance of the compensation to them. Mrs. Salser was a widow, and dependent upon her said son for support. The said order was appealed from, and the trial court gave judgment against the company for the unpaid balance of compensation. The company appealed from that judgment to the Court of Civil Appeals at Galveston, contending that under the Workmen's Compensation Act the right of Salser to compensation did not upon his death descend to and vest in his heirs, but terminated with his death. The court, speaking through Judge Pleasants, said:

"The clearly expressed intention of the Legislature in the passage of our Workmen's Compensation Act was to provide compensation to employés for injuries received by them in the course of their employment and to dependents of employés who should die as the result of injuries so received. There is nothing in the act which preserves in an heir of an employé the right to compensation due the employé for injuries received by him, and the beneficiaries named in the act are only given the right to compensation when the employé dies as a result of his injuries. The only right given by the act to heirs or beneficiaries of an injured employé is given by section 8, which reads as follows: 'If death should result from the injury, the association hereinafter created shall pay the legal beneficiaries of the deceased employé a weekly payment equal to 60 per cent. of his average weekly wages,' etc. Acts 35th Leg. p. 273.

"The compensation provided for the injured employé is for his benefit and protection, and if the employé dies before receiving any of such compensation, his death not being caused by the injury, no right thereto survives to his heirs. The agreement of appellant to pay the compensation awarded Oscar Salser by the Industrial Accident Board in accordance with the terms of said award did not change the nature of the right to the compensation, and appellees' claim is not founded upon a vested contract right of their decedent, but their cause of action is dependent upon whether the statute which provides compensation for an injured employé gives to the employé a vested right which would pass by will or inheritance. We do not think the statute should be so construed. Re Murphy, 224 Mass. 592, 113 N. E. 283; Re Bartoni, 225 Mass. 349, 114 N. E. 663, L. R. A. 1917E, 765.

"In the Murphy Case, supra, the Supreme Court of Massachusetts, in passing upon the question of whether an award made under the Compensation Act of that state to a dependent of an employé who died as the result of injuries received in the course of his employment, says: 'To hold that dependent's right to compensation is a vested right, which passes to a legatee by will and in case of intestacy goes to the dependent's next of kin, would be to put upon the insurer a burden not called for by the object which the act was passed to attain. In addition, the compensation awarded the dependent would go in that case to persons altogether outside the class contemplated by the act. So construed, the act would or might enrich strangers in place of doing justice to the family and next of kin of an employé killed in the course of and so as an incident to the business in which he was employed.'

"In the Bartoni Case, supra, the Supreme Court of that state said: 'The right to the weekly award was not vested absolutely in the widow, but continued only during her life. The right to compensation on her account ceased with her death.'

"In our opinion it would do violence to the purpose of our act, and place a burden upon the insurer not intended by the act, to hold that the right to the compensation therein provided for the benefit of the injured employé upon the death of the employé passes to heirs regardless of whether his death was caused by his injury and regardless of whether the heirs are dependents of the deceased, and unless our act be so construed appellees' claim in this suit can not be sustained."

Appellants contend that the Salser Case is not in point, because that is a case of the loss of an eye, and this is a case of death. While there is that difference in fact, the principle of law involved is the same. Further, the Court of Civil Appeals in the Salser Case based their opinion upon the Murphy Case, 224 Mass. 592, 13 N. E. 283, and the Bartoni Case, 225 Mass. 349, 114 N. E. 663, L. R. A. 1917E, 765. Murphy's Case is precisely in point. In that case the court said:

"The appeal in this case brings to us the question of the character of the right to compensation (under the Workmen's Compensation Act) given to a dependent of an employé

who dies of an injury within the act. In the case at bar, the death of the dependent took place while the case was pending on appeal from an award of the Committee of Arbitration and before the case was heard by the Board. An administrator intervened, and the Board directed that $9.75 a week for 300 weeks should be paid to the administrator to be paid by him to the next of kin of the deceased defendant. This was confirmed by the decree of the superior court.

"The deceased employé lived with his mother who for some years had been wholly incapacitated by the fatal disease of which she died. The other members of the family were a daughter who carried on the household, doing the household work with her own hands, a brother, and an adopted daughter who was a minor. The brother and adopted daughter were sickly, and contributed to the household expenses enough but no more than enough to pay for what they received from it. The deceased had another brother who did not live at home and made no contribution to the maintenance of the family. The Board found that the mother was wholly dependent upon the deceased, and that finding was warranted by the evidence. The Board found that the family was the family of the mother, not of the son. That finding also was warranted by the evidence. It follows that the only person entitled to recover was his mother, she being the deceased's only next of kin. Kelley's Case, 222 Mass. 538, 111 N. E. 395.

"There is no provision in the Workmen's Compensation Act dealing expressly with the question which this case presents. Whether the sum which a dependent is entitled to upon the death of an employé is a vested interest or ceases upon the death of the dependent, is a question which must be decided by the general provisions of the act interpreted in the light of the object which the act was passed to effect.

"The act recognizes that a personal injury suffered by an employé arising out of and in the course of his employment is an incident of the business in which he is employed. In consequence of that the act provided that as a matter of justice the resulting burden should be borne by the business without regard to the question of fault on the part of the employer or of the employé. The only exception to this is where the injury is caused by the serious and willful misconduct of the employé. In that case no compensation is given.

"In carrying out this object it was provided that where death results from an injury within the act, the insurer shall pay to the dependent or dependents of the employé a weekly payment based upon the average weekly wages of the deceased employé. Defendants are defined by the act to be members of the employé's family or next of kin who were wholly or partly dependent for support upon the earnings of the employé at the time of the injury.

"In the case at bar, as we have said, the original petitioner being the mother of the employé was his sole next of kin and under the findings of the Industrial Accident Board was wholly dependent upon the deceased for her support. The act in effect provides that as a measure of justice, the mother (the sole next of kin of the deceased in the case at bar)

should receive in lieu of the help she got from the wages of the deceased while he lived, a payment for 300 weeks based upon the amount of his wages. When she died the occasion for making compensation to her (which the act as matter of justice required should be made) came to an end.

"To hold that the dependent's right to compensation is a vested right which passes to a legatee by will and in case of intestacy goes to the dependent's next of kin, would be to put upon the insurer a burden not called for by the object which the act was passed to attain. In addition, the compensation awarded the dependent would go in that case to persons altogether outside the class contemplated by the act. So construed the act would or might enrich strangers in place of doing justice to the family and next of kin of an employé killed in the course of and so as an incident to the business in which he was employed. * * *

"For these reasons we are of opinion, that although there is no express provision to that effect in the act, the weekly payment to be made to the dependent comes to an end when the dependent dies."

Article 5246—14 provides that if death result from the injury the compensation shall be paid to the legal beneficiaries of the deceased employé. Article 5246—15 designates who are legal beneficiaries, and provides that the compensation shall be for their sole and exclusive benefit, and that said compensation shall not pass to the estate of the deceased to be administered upon, but shall be paid directly to said beneficiaries. Article 5246—35 provides that in all cases of injury resulting in death, where such injury was sustained in the course of employment, the cause of action shall survive. In arriving at the legislative intent in the provision "cause of action shall survive," all three of said articles must be construed together. They relate to the same subject—compensation for injuries resulting in death. What is meant by the expression "cause of action shall survive"? Shall survive to whom? To the person or persons designated as beneficiaries, for article 5246—15 especially provides that the compensation provided for in article 5246—14 (compensation where death results) "shall be for the sole and exclusive benefit of the deceased's surviving beneficiaries," naming them, and appellants are not found in that list. The law (article 5246—15) provides that the compensation shall not be liable for debts of deceased, or debts of beneficiaries, and that same shall be distributed according to the laws of descent and distribution, among the beneficiaries, and that such compensation shall not pass to the estate of the deceased to be administered upon, etc., showing, we think, the clear intent of the law to be that such compensation was intended for the special relief of persons designated as beneficiaries only and was to be confined to them.

We think that article 5246—17, which provides that, if the deceased employé leaves no legal beneficiary, the ·association shall pay all expenses incident to his last sickness as a result of the injury, and in addition a funeral benefit not to exceed, $100, evidences the intent of the Legislature to confine the payments of compensation to the legal beneficiaries of the deceased for, if it had been in the legislative mind that the compensation should go to parties other than the legal beneficiaries named in the law, they would not have cut off the heirs. at law of such deceased employé who died without leaving any legal beneficiary, and would not have written article 5246—17 into the law.

We are supported in our view that the right to compensation is personal to the injured employé, and in case of his death from injury personal to his legal beneficiaries, by the provisions of article 5246—3. It provides that—

" * * * All compensation allowed under the succeeding sections herein shall be exempt from garnishment, attachment, judgment and all other suits or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, except as otherwise herein provided, and any attempt to assign the same shall be void."

The only assignment permitted is in the case of attorney's fees. Article 5246—12. The right to the compensation is a creature of the statute, and the statute confines it to the employé in case of injury, and to his named beneficiaries in case of his death. It is entirely and exclusively personal in either event, so much so that by law the person entitled to compensation is prohibited from assigning same. It has been held that when a right is so entirely personal that the party in whom it exists cannot by contract place it beyond his control, it will not survive, and that, as a general rule, assignability and survivability of causes of action are convertible terms. Selden · v. Ill. Trust & Savings Bank, 239 Ill. 67, 87 N. E. 863; 130 Am. St. Rep. .184; Ray v. Industrial Com., 99 Wash. 176, 168 Pac. 1121, L. R. A. 1918F, 561.

We are further strengthened in this view by the interpretation placed upon Rev. St. art. 4698, commonly known as the "death" statute, the provisions of which are very similar to the law under consideration. It provides:

"The action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been caused, and the amount recovered therein shall not be liable for the debts of the deceased."

In construing this article, Judge Fly, in the case of Texas Loan Agency v. Fleming, 18 Tex. Civ. App. 668, 46 S. W. 63, said:

"The first assignment of error complains of the action of the court in not having the heirs or legal representatives of Mildred Fleming, mother of· deceased, who died during the pendency of the suit, made· parties. The assignment is without merit. In article 3021, Rev. St. 1895, it is provided that in cases of death arising from the negligence of another 'the action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been so caused, and the amount recovered therein shall not be liable for the debts of the deceased.' In article 3024, it is provided that 'the action shall not abate by the death of either party to· the record, if any person entitled to the benefit of the action survives. If the plaintiff die pending the suit, when there is only one plaintiff, some one or more of the parties entitled to the money recovered may, by order of the court, be made plaintiff, and the suit be prosecuted to judgment in the name of such plaintiff for the benefit of the persons entitled.' It is clear that by the 'parties entitled to the money' is meant one of the class mentioned in article 3021, and that the provision was made to cover cases where one party brings suit for others, and dies as in the case of a parent suing for the benefit of minor children. This more fully appears as the reasonable construction of the law from the language of article 3025, wherein it is provided that, 'if the sole plaintiff die pending the suit, and he is the only. party entitled to the money recovered, the suit shall abate.' That statute clearly shows that the intention was that the cause of action should be confined to the parties named in article 3021, and should not survive them."

This case was followed in the case of G. C. & S. F. Ry. Co. v. Higginbotham (Tex. Civ. App.) 173 S. W. 482.

But appellants contend that, as the Compensation Act, arts. 5246—14 and 5246—15, specifically provides that a cause of action shall be given to beneficiaries of the deceased, and article 5246—35 provides that the cause of action shall survive, that these provisions, considered in connection with the title of the act—"An act relating to employers' liability and providing for compensation of certain employés and their representatives and beneficiaries * * * for deaths resulting from such injuries"—express the intent of the act, that the compensation is provided for the named beneficiaries and their personal representatives. We do not believe this contention to be sound. The title to the act does not provide for compensation to be paid to the representatives of the deceased employé's deceased beneficiaries, but only to the representatives of the deceased employé, and his (the deceased employé's) legal beneficiaries. There is nothing in the title of the act or the act itself providing for compensation to be paid to representatives of beneficiaries who have died pending compensation payments. but the title specifically says, ·certain employés and their representatives," not the representatives of their beneficiaries.

Appellants further contend that· in article·

5246—14 the exact amount of compensation is fixed for all death cases; that a fixed amount is awarded to a definite beneficiary or beneficiaries, as a matter of right, with no language suggesting in any way an abatement of the award in case of the death of the persons to whom it was made prior to the payment in full; that the amount of the award is fixed, just as much so as if the award had been made in a lump sum; that the sum awarded vests in and is a part of the beneficiary's estate; that the law provides for either a lump sum payment or an award of weekly payments for 360 weeks, no more and no less. The same contention could be made for the loss of an eye, arm, finger, and in fact, for any injury, for the statute definitely fixes the amount of compensation and the manner of payment for each and every injury within the law. This is not a case where an award has been made in a lump sum entitling the beneficiary to receive the compensation all in one payment, but where it was to be paid from week to week. Under the law, when the compensation is to be paid weekly, an installment is not due until the time for its payment has arrived, and when the award extends the payments over a period of 360 weeks does not make the aggregate sum of such weekly payments due, either at the time of the making of the award or at the subsequent death of the beneficiary, within the period of such payments. Wozneak v. Buffalo Gas Co., 175 App. Div. 268, 161 N. Y. Supp. 675. In the case at bar the Industrial Accident Board found that Minnie Sanders, upon the death of her husband, became entitled to recover of and from the Lumbermen's Reciprocal Association compensation as an absolute and vested right for the definite period of 360 weeks at the rate of $11.27 per week, payable weekly from week to week as each payment accrued, and that she made claim for compensation, and that the Lumbermen's Reciprocal Association admitted liability and assumed the payment of compensation, and that when she died her estate stands in her place in respect to the compensation benefit, and that said estate and its legal representatives, appellants here, are entitled to recover the unpaid and unaccrued remainder of said compensation. This identical contention was made in Wozneak v. Buffalo Gas Co., supra, and the State Industrial Commission of New York made the same finding as did the Industrial Accident Board above, but the Supreme Court of New York held against said contention, and this holding was followed later in the case of Casmey v. Parks (Sup.) 177 N. Y. Supp. 913.

Believing that the proper judgment was rendered in the court below, and finding no error in the record, the judgment is affirmed.